The plaintiffs, Cincinnati Insurance Company ("Cincinnati") and Tolbert and Mildred Shelby appeal from the dismissal of their complaint against defendant, Synergy Gas, Inc. ("Synergy"), for their failure to comply with a request for production. We affirm in part, reverse in part, and remand.
The trial court entered the following order:
 "This cause is before this Court on a motion to dismiss filed by the defendant, Synergy Gas Corporation, due to the failure of the plaintiffs to preserve certain evidence in this cause.
"Certain facts are undisputed:
 "1. On or about April 25, 1986; the residence of Tolbert and Mildred Shelby was destroyed by fire. Cincinnati Insurance Company had a policy of insurance in effect on the dwelling, insuring the Shelbys against loss to the residence and contents due to fire.
 "2. On April 28, 1986, . . . Cincinnati Insurance Company sent Mr. Jack R. Mitchell, special investigator, to the fire scene to determine the cause and origin of the fire. Photographs were made of the fire scene. On May 5, 1986, Mr. Mitchell brought Dr. Marion McKinley of Alchem Engineers, also a professor at the University of Alabama in Tuscaloosa, to look at the fire scene. Dr. McKinley examined the water heater, furnace, tank, LP gas piping, furnace burner ribbons, a broken pipe fitting on the LP gas line and the regulator located on the 500-gallon tank.
 "3. Subsequent to the fire, after . . . Cincinnati Insurance Company's experts had examined the premises and during the rebuilding of the . . . Shelbys' home, all of the fire debris, including appliances, pipes, and all of the LP gas system (with the exception of the regulator) was removed from the premises and either *Page 824 
destroyed or taken to places unknown. The removal of the debris was allowed by the Shelbys and done at their direction. The regulator had previously been removed from the LP tank by the Alabama LP Gas Board representative.
 "4. Two years later (3 days short of the [running] of the statute of limitations) the Shelbys and Cincinnati Insurance Company filed suit against Synergy. . . .
 "The sole issue in defendant's motion is whether this case should be dismissed due to the plaintiffs' allowing the destruction of evidence which could be used in determining the cause of the fire.
 "In deciding this issue the Court looks at several factors:
 "1. Importance of the Evidence Destroyed: The defendant's expert, Eleanor P. Posey, states in her affidavit '. . . I now have almost no evidence available to me with which to formulate soundly based opinions as to the cause(s) of this fire; no physical evidence whatsoever was preserved from this fire scene by either the plaintiffs or their experts! Only one item of physical evidence was available for me to examine and test first hand and that was the LP-Gas service (tank) regulator, which was removed and preserved, not by the plaintiffs, or any of their experts, but by the LP-Gas Board investigator, Mr. Joe Scoggins.'
 "The Plaintiffs' claim that the cause of their damages was the defective design, installation, maintenance or inspection of the LP-Gas system and/or appliances by the defendant. Yet substantially all of the evidence has been allowed by the plaintiffs to be destroyed or lost.
 "2. Culpability of Offending Parties: While there has been no allegation of malicious intent on the part of the plaintiffs in the destruction of the evidence, the failure of the plaintiffs to preserve, or even attempt to preserve, the evidence is difficult for this Court to comprehend.
 "While such negligence on the part of [the Shelbys] might be excusable due to a lack of knowing the importance in later litigation, it is inconceivable that an insurance company who had investigators on the fire scene three days after the fire could fail to realize the importance of such evidence in future litigation.
 "Absolutely no efforts were made to preserve any of the evidence at the fire scene.
 "3. Fundamental Fairness: The plaintiffs' experts had ample opportunity to inspect, test, photograph and preserve all evidence at the fire scene. Based upon all of the circumstances, the plaintiff's experts concluded that the [defendant was] negligent, however, the same experts who [recognized] the implications of the fire debris, refused to preserve that same important evidence for examination by the defendant.
 "The affidavit of the defendant's expert states that she is unable to draw any conclusions as to the cause of the fire due to [the] lack of preservation of the evidence by the plaintiffs.
 "The Court considers of further significance the fact that the plaintiffs waited almost two years after the fire to file this lawsuit, although the conclusions of their experts as to the cause of the fire were made only days after the occurrence.
 "4. Alternative Sources of Information: In addition to failing to preserve the actual pieces of physical evidence, very little tangible alternatives exist. Of the photographs taken by plaintiffs' experts at the scene, none visibly [demonstrates] a fire cause. No objective testing or measurements were performed. Very limited field notes were taken by plaintiffs' experts.
 "There exist no alternative or secondhand sources of information from which the cause of the fire could accurately be assessed independently.
"APPLICATION OF LAW
 "The precise question of what sanctions, if any, are appropriate where the plaintiff permits or allows the apparatus made the subject of a lawsuit to be lost or destroyed prior to the filing of the *Page 825 
complaint, has not been addressed by Alabama Courts.
 "The closest Alabama case is Iverson v. Xpert Tune, Inc., 553 So.2d 82 (Ala. 1989). In that case, the Supreme Court of Alabama affirmed a trial judge's dismissal of a lawsuit for failure of the plaintiff to produce an alleged faulty fuel pump made [the] basis of the complaint. In Iverson, the plaintiff permitted the fuel pump to be lost or destroyed after a request for production had been filed by the defendant.
 "In this matter, not only was there no outstanding [request] for production of the appliances and other LP gas apparatus, but the lawsuit had not been filed at the time the plaintiffs permitted the loss or destruction of the evidence.
 "However, the Illinois case of Graves v. Daley, [172 Ill. App.3d 35, 122 Ill.Dec. 420, 526 N.E.2d 679 (1988),] bears a striking resemblance to the facts of this case. That case involved a house fire; an insurance company investigation of the cause; a report by the insurance company that a defective furnace was a suspected cause; and the homeowner allowing the heating system to be lost or destroyed . . . prior to the filing of the complaint.
 "In Graves, the Illinois Court affirmed the trial court's dismissal of the lawsuit and held that:
 " 'Although it is correct that the plaintiffs did not violate court orders, the fact remains that the furnace was destroyed by plaintiffs at Western State's suggestion. The plaintiffs are not free to destroy crucial evidence simply because a court order was not issued to preserve the evidence. Further, the furnace was destroyed by the plaintiffs after their expert had examined it and before the suit was filed, thus, the court could not have issued a preservation order.'
"[122 Ill.Dec. 420 at 422] 526 N.E.2d 679 at 681.
 "In the present case Cincinnati Insurance Company made no efforts to preserve the LP gas equipment and appliances after a determination had been made by [its] experts that the fire was caused by the LP gas system. [Tolbert] Shelby, according to his deposition, was allowed by the insurance company to remove and destroy all of the physical evidence after the fire loss was paid.
 "Based upon the acts and failure to act of the [the Shelbys] and Cincinnati Insurance Company, and the fact that the lawsuit was not filed until two years after the fire, the Court is of the opinion that the defendant would be unable to defend the allegations and [that] the inability to defend is based solely on the conduct of the plaintiffs. This Court finds that this is the type of situation which the spirit and letter of Rule 37 [A.R.Civ.P., were] meant to address.
 "In accordance with the facts and the law, it is, therefore,
 "ORDERED that the defendant's motion to dismiss is hereby granted and the claims of Cincinnati Insurance Company and Tolbert and Mildred Shelby against Synergy Gas Corporation are hereby dismissed with prejudice, costs taxed to the plaintiffs."
(Emphasis in original.)
Rule 37, A.R.Civ.P., provides the method for dealing with a party's failure to comply with discovery. That rule provides, in pertinent part, as follows:
 "(d) Failure of Party to . . . Respond to Request for Inspection. If a party . . . fails . . . (3) to serve a written response to a request for production or inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule."
Rule 37(b)(2)(C) states that the trial court, under the appropriate circumstances, may enter "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." An *Page 826 
order to compel discovery is not required in order to bring Rule 37(d) into play. It is enough that a request for inspection or production has been properly served on the party.Iverson v. Xpert Tune, Inc., 553 So.2d 82 (Ala. 1989).
In Iverson, this Court discussed the standard of review applicable to a dismissal under Rule 37 for failure to comply with a discovery request:
 "The trial court is vested with broad and considerable discretion in controlling the discovery process and in making rulings on all matters pertaining to discovery, including the authority to make such rulings as are necessary to protect the integrity of the discovery process. See Ex parte Sargent Industries, Inc., 466 So.2d 961 (Ala. 1985); Ex parte McClarty Const. Equipment Co., 428 So.2d 629 (Ala. 1983); Hancock v. City of Montgomery, 428 So.2d 29 (Ala. 1983); Ex parte Allstate Ins. Co., 401 So.2d 749 (Ala. 1981); Ex parte Old Mountain Properties, Inc., 415 So.2d 1048 (Ala. 1982), cert. denied, Old Mountain Properties, Ltd. v. April Investments, Inc., 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982). Furthermore, deeply rooted in the common law is the court's power to manage its affairs in order to achieve the orderly and expeditious disposition of cases, including the authority to impose reasonable and appropriate sanctions for failure to comply with discovery. See Carlucci v. Piper Aircraft Corp., 775 F.2d 1440 (11th Cir. 1985); Flaksa v. Little River Marine Construction Co., 389 F.2d 885
(5th Cir.), cert. denied, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968); Link v. Wabash R. R., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734
(1962).
 "The choice of discovery sanctions is within the trial court's discretion and will not be disturbed on appeal absent gross abuse of discretion, Johnson v. Langley, 495 So.2d 1061 (Ala. 1986); Deaton, Inc. v. Burroughs, 456 So.2d 771 (Ala. 1984); Weatherly v. Baptist Medical Center, 392 So.2d 832 (Ala. 1981), and then only upon a showing that such abuse of discretion resulted in substantial harm to appellant. Edward Leasing Corp. v. Uhlig Associates, Inc., 785 F.2d 877 (11th Cir. 1986).
 "We recognize that the sanction of dismissal is the most severe sanction that a court may apply. See Ultracashmere House, Ltd. v. Meyer, 407 So.2d 125 (Ala. 1981); Holt v. David G. Steven, Inc., 416 So.2d 1071 (Ala.Civ.App. 1982). Judicial discretion must be carefully exercised to assure that the situation warrants the imposition of such a sanction. Weatherly v. Baptist Medical Center, supra; Durham v. Florida East Coast Ry., 385 F.2d 366 (5th Cir. 1977); Brown v. Thompson, 430 F.2d 1214 (5th Cir. 1970). Dismissal orders must be carefully scrutinized, and the plaintiff's conduct must mandate dismissal. Smith v. Wilcox County Board of Education, 365 So.2d 659 (Ala. 1978). We have held that 'willfulness' on the part of the noncomplying party is a key factor supporting a dismissal. See Weatherly v. Baptist Medical Center, supra; see also National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). If one party has acted with willful and deliberate disregard of reasonable and necessary requests for the efficient administration of justice, the application of even so stringent a sanction as dismissal is fully justified and should not be disturbed. See Trans World Airlines, Inc. v. Hughes, 332 F.2d 602 (2d Cir. 1964), cert. dismissed, 380 U.S. 248, 85 S.Ct. 934, 13 L.Ed.2d 817 (1965); 1 Lyons, Alabama Practice (1973) (Author's Comments to Rule 37); see also Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062 (2d Cir. 1979).
". . . .
 ". . . The trial court is the more suitable arbiter for determining with accuracy the culpability of the failure to produce or of the spoliation, and, for that reason, we will show great deference toward a trial court's decision with respect *Page 827 
to such culpability. . . . [T]rial courts, when confronting litigants who have manifested willfulness and bad faith in failing to produce or in allowing spoliation, must not be unduly hampered in granting the ultimate sanction of a denial of an opportunity to prosecute or defend the claim."
553 So.2d at 87-89.
In the present case, the trial court found that the plaintiffs had deliberately disposed of the items that were later the subject of the request for production. Although the trial court noted that there had been no "allegation" of malicious intent on the part of the plaintiffs in destroying the items and that the Shelbys' conduct "might be excusable" because of their lack of knowledge of the importance of preserving evidence for future litigation, the trial court, understandably, could find no justification for Cincinnati's conduct. As we read its order, the trial court found that Cincinnati had willfully allowed the destruction of the items in question, with full knowledge of the importance of those items as evidence in any future litigation. Our conclusion in this regard is based on the trial court's findings that Cincinnati had fire investigators on the scene within three days after the fire; that those investigators had quickly concluded that the gas system allegedly installed by Synergy was the cause of the fire; and that Cincinnati, as subrogee under the Shelbys' policy, was aware of the importance of preserving the evidence for future litigation. We also find it to be significant that the plaintiffs' complaint states that Cincinnati paid the Shelbys over $291,000 under the terms of the policy. Because such a large sum of money was involved, it is certainly not difficult to understand why the trial court apparently believed that Cincinnati was aware soon after the fire that future litigation was likely.
The plaintiffs argue that the trial court's finding of "willfulness" on the part of Cincinnati is not supported by the evidence. We hasten to point out, however, that the record presented to us in this case does not contain any of the affidavits, depositions, etc., on which the trial court based its judgment. Where all of the evidence is not in the record, we presume that the evidence was sufficient to sustain the judgment. See Berryhill v. Mutual of Omaha Insurance Co.,479 So.2d 1250 (Ala. 1985).
We can find no abuse of discretion on the trial court's part in dismissing the plaintiffs' claims that were based on the alleged malfunction of those components of the gas system that were destroyed by the plaintiffs. However, the plaintiffs urge us to allow them to proceed with their claims that are based on the alleged malfunction of the gas regulator, which is still available for further inspection by Synergy's experts. The plaintiffs, who alleged in their complaint that the fire had resulted from a malfunction of "the LP Gas tank, gas furnace and/or gas regulator, component parts thereof, and/or any attending equipment used therewith," apparently have taken the position that they are willing to pursue a recovery under a single theory — that the gas regulator was defective and that that defect alone caused the fire. This Court has a long-established and compelling policy objective of affording litigants a trial on the merits whenever possible. Iverson;
see, also, Kirtland v. Fort Morgan Authority Sewer Service,Inc., 524 So.2d 600 (Ala. 1988), and Jones v. Hydro-Wave ofAlabama, Inc., 524 So.2d 610 (Ala. 1988). Although we do not condone the plaintiffs' willful destruction of the most crucial pieces of the evidentiary puzzle in this case, after careful review we are persuaded that, in keeping with this policy objective, the plaintiffs should be allowed to proceed to trial, but solely on the theory that the gas regulator was defective and that that defect alone caused the fire. By allowing the plaintiffs to proceed to trial solely on this theory, all of the applicable policy objectives will be furthered in this case. The plaintiffs will be afforded the opportunity to have a trial on the merits; the restriction of the plaintiffs' case to the single theory based on the allegedly defective regulator will serve to punish them for their willful destruction of crucial evidence and, therefore, to preserve the integrity of the discovery process; and Synergy will be assured *Page 828 
of an opportunity to present an adequate defense.
For the foregoing reasons, we affirm the dismissal of the plaintiffs' claims that were based on the destroyed components of the gas system. However, in keeping with our policy objective of affording litigants a trial on the merits whenever possible, we reverse the dismissal of the plaintiffs' claims that are based on the allegedly defective regulator, and we remand the case for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, KENNEDY and INGRAM, JJ., concur.